# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELTON W. ERVIN, | Case No. 1:13-cv-446-GSA |
|     Plaintiff, | |
| v. | ORDER RE: MOTION FOR SUMMARY JUDGMENT |
| MERCED POLICE DEPARTMENT; E. CHAVEZ-BADGE #156; SERGEANT APONTE; SLAYER BADGE #191; PADGETT-#180; and DOES 1-4; | (Doc. 65) |
|     Defendants. | |

## I.    **Procedural History**

Plaintiff Elton W. Ervin ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's First Amended Complaint ("FAC") was removed from the Merced County Superior Court on March 26, 2013. (Doc. 1). On October 23, 2013, United States District Court Judge Anthony W. Ishii dismissed all of Plaintiff's causes of action except for Plaintiff's claims for a violation of the Fourth Amendment based on theories of arrest without probable cause and excessive use of force. (Doc. 10). The parties subsequently consented to magistrate judge jurisdiction and the case was reassigned to this court on February 7, 2014. (Docs. 27, 30, and 31).

Pending before the Court is the City of Merced and Officer Chavez, Officer Salyers

(erroneously sued as Officer Slayer), Officer Padgett's, and Sergeant Aponte's ("Defendants" of "Defendant Officers") Motion for Summary Judgment. (Docs. 65-71). Defendants request summary judgment be granted on all of the remaining causes of action on the basis that there are insufficient facts to establish Plaintiff's claims, and on the basis that Defendants are entitled to qualified immunity. The Court has considered Plaintiff's Opposition (Docs. 81-84) and Defendants' Reply (Doc. 88).[1] Defendants' Motion for Summary Judgment was submitted on the record without oral argument pursuant to Local Rule 230(l). (Doc. 42). For the reasons that follow, the Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## II.  Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

---

[1] The Court notes that Plaintiff filed a Sur-Reply (Doc. 94) and Defendants have filed an opposition to the filing of the Sur-Reply (Doc. 96). Local Rule 230(l) does not permit the filing of a Sur-Reply. The Court did not request additional briefing, nor is additional briefing in a Sur-Reply warranted because no new arguments were raised in Defendants' Reply brief. Therefore, Plaintiff's Sur-Reply is Stricken. (Doc. 94)

(1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted). "If a rational trier of fact could resolve a genuine issue of material fact in the nonmoving party's favor," summary judgment is inappropriate. *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014) citing *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge." *Id.*

**III.    Preliminary Issues**

*A. Procedural Defects*

Defendants have argued that Plaintiff's Opposition is procedurally defective because he has failed to follow Local Rules and did not provide the Court with a separate statement of facts in his opposition. (Doc. 88, pgs. 5- 9). Instead, Defendants contend that Plaintiff admits or denies each of Defendants' undisputed facts in his brief, and makes arguments based on his contentions without citing to admissible evidence which is insufficient to oppose the motion. (Doc. 82, pgs. 5- 23). However, it is well-established that verified pleadings and verified oppositions constitute opposing declarations, as long as they are based on personal knowledge and they set forth facts

admissible in evidence to which the declarant is competent to testify, *Moran v. Selig,* 447 F.3d 748, 759–60 (9th Cir. 2006); *Jones v. Blanas,* 393 F.3d 918, 923 (9th Cir. 2004); *Lopez v. Smith,* 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000); *Johnson v. Meltzer,* 134 F.3d 1393, 1399–1400 (9th Cir. 1998); *Schroeder v. McDonald,* 55 F.3d 454, 460 n. 11 (9th Cir. 1995); *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987) (per curiam); *Lew v. Kona Hosp.,* 754 F.2d 1420, 1423 (9th Cir.1985). Plaintiff's Opposition and FAC are verified pleadings as they are signed under penalty of perjury, and therefore, they function as opposing declarations to the extent they set forth admissible facts within Plaintiff's personal knowledge. (Doc. 1, pg. 49; Doc. 82, pg. 23); *See*, 28 U.S.C. § 1746.

### *B. Withdrawal of Admissions*

Relatedly, many of Defendants' arguments are based on the fact that Plaintiff failed to respond to Requests for Admissions Set One ("RFAs") that were served on June 25, 2014, and therefore they are deemed admitted. (DSUF, ## 44-47, Doc. 66, pgs. 4-8; Doc. 70, pgs. 7-8). When a party fails to timely respond to requests for admissions, those requests are automatically deemed admitted. *See* Fed. R. Civ. P. Rule 36(a); *Federal Trade Commission v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal., July 18, 2002) ("[n]o motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self-executing."). However, a district court has discretion to grant relief from an admission under Rule 36(b) when: (1) "it would promote the presentation of the merits of the action" and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) citing *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir.1995). "The first half of the test in Rule 36(b) is satisfied when upholding the admission would practically eliminate any presentation of the merits of the case." *Hadley,* 45 F.3d at 1348. Under the second half of the Rule 36(b) test, "[t]he party relying on the deemed admission has the burden of proving prejudice." *Conlon,* 474 F.3d at 622. "The prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key

witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." *Hadley,* 45 F.3d at 1348, citing *Brook Village N. Assocs. v. General Elec. Co.,* 686 F.2d 66, 70 (1st Cir.1982). The party who obtained the admission has the burden of proving that the withdrawal of the admission would prejudice the party's case.

The factors set forth above weigh in favor of granting relief to Plaintiff under Rule 36(b).[2] In this case, the RFA's are extensive. By failing to respond to the requests, Plaintiff admitted the relevant facts to each claim against all of the Defendants. Upholding the admissions would effectively eliminate consideration of the merits of this case. *See Hadley*, 45 F.3d at 1345. Moreover, although Defendants argue that Plaintiff has failed to explain why he did not respond to the requests, an examination of the record reveals otherwise. In the Opposition, Plaintiff contends that he never received the requests because they were mailed to his old address after his most recent incarceration, and he was unable to notify the Court of his address at that time due to his father's death. (Doc. 82, pg. 10, ¶ 32). These facts are consistent with the docket in this case. Shortly after serving the requests for admissions at the end of June 2014, Defendant requested that the Court permit a meet-and-confer via letter with Plaintiff because Plaintiff failed to appear at his deposition on July 21, 2014, due to a recent incarceration. (Docs. 34-35). Plaintiff subsequently advised the Court of his new address, explaining that his father had passed away and that he was homeless which led to the delay in notifying the Court and Defendants of his new address. (Doc. 41). The Court permitted Plaintiff to continue to litigate this case and change his address of record, albeit late. (Doc. 42).

Although Defendants correctly note that Plaintiff was required to advise the Court of his new address pursuant to Local Rule 183(b) earlier, it would be unjust to penalize him for failing to respond to pleadings that he never received. This is especially true when the Court previously

---

[2] The Court notes that Plaintiff has not filed a formal Motion to Withdraw his Admissions, however, as set forth *infra*, in his Opposition, he asserts that the never received these Requests for Admissions. Moreover, upon further review of the docket, Plaintiff requested an opportunity to respond to these Requests for Admissions, but it was not clear to the Court what this request related to at the time Plaintiff filed his motion. (Doc. 86, pg. 3, lines 20-22). Because Plaintiff is pro se, the Court must construe his pleadings liberally *Hebbe v. Pliler*, 627 F. 3d 338, 342 (9th Cir., 2010). Therefore, the Court construes Plaintiff's Opposition, and his previous request as a Motion to Withdraw his admissions. (Doc. 82, pg. 10, ¶ 32 and Doc. 86, pg. 3, lines 20-22).

excused Plaintiff's failure to keep the Court apprised of his address, and there is no evidence that the RFAs were subsequently re-served on him once his address had been updated.

The second prong of the test is also met. Defendants have argued that they will be prejudiced by the withdrawal of Plaintiff's admission because they have been operating under the assumption that the allegations were admitted. They contend they will be prejudiced because discovery has closed and they will not be able to re-depose Plaintiff on the facts that he sets forth in his Opposition. (Doc. 88, pgs. 5-13). However, a review of the Opposition reveals that many of the contested issues are also outlined in the FAC, so Defendants were aware of any potential disputed facts at the time of his initial deposition. Moreover, Defendants have not relied solely on Plaintiff's admissions in this Motion for Summary Judgment, but have submitted additional declarations to rebut Plaintiff's claims. In light of these circumstances, prejudice to the Defendants appears minimal. Nevertheless, in order to minimize any potential prejudice to the Defendants, the Court will entertain a motion from the Defendants to reopen discovery for the limited purpose of addressing issues resulting from the withdrawn of admissions prior to trial if needed.

Given all of the above, the Court exercises its discretion under Rule 36(b) to grant relief. *See Lyons v. Santero*, 2011 WL 3353890 at *3 (C. D. Cal., May 11, 2011) (granting relief to plaintiff under Rule 36(b) for similar reasons); *Douglas v. Stevens*, 2011 WL 3555703 (E. D. Cal., Aug. 11, 2011) ("To permit the defendant to invoke Rule 36(a)(3) would be to allow the pro se plaintiff to essentially be sandbagged into admissions he made at least some reasonable effort to deny."). Accordingly, Plaintiff's admission are deemed withdrawn.

**IV.   Summary of Undisputed Material Facts[3]**

1.   Around 10:00 p.m. on Saturday, January 14, 2012, City of Merced Officer Eduardo Chavez was on duty in full uniform in a patrol car. *Declaration of Eduardo Chavez*, dated April

---

[3] This section is comprised of facts set forth by Defendants in their Statement of Undisputed Facts ("DSUF"). Those facts brought into dispute by Plaintiff through admissible evidence, including assertions contained in the FAC, or in his Opposition, to the extent that he has personal knowledge, are considered to be disputed and have been omitted from this section.

6

15, 2015 ("*Chavez Dec'l*") ¶ 3, (Doc. 67); Defendants' Statement of Undisputed Facts ("DSUF") # 1.

2. Officer Chavez received a report from dispatch that a citizen had seen a suspicious vehicle identified as a green Ford Focus in the area of Main Street and "K" Street in Merced, California. *Id*.; (DSUF #2).

3. Officer Chavez proceeded to look for the suspicious vehicle ("the vehicle"). He observed Plaintiff driving a green Ford Focus matching the description of the vehicle. *Id*. (DSUF # 3, 4 & 5).

4. Plaintiff parked the green Ford Focus at or about 536 West 8th Street. *Id*. at ¶ 4; (DSUF # 7).

5. Officer Chavez parked his car behind Plaintiff's vehicle. Officer Chavez got out of his patrol car and approached Plaintiff's car. *Id*.; (DSUF #7 & #8).

6. Officer Chavez saw Plaintiff exit his car. *Id*.; (DSUF #9).

7. Officer Chavez spoke to Plaintiff after Plaintiff was out of his car. *Id.*; (DSUF # 10).

8. Plaintiff moved away from Officer Chavez into the street. Officer Chavez eventually tackled Plaintiff causing both men to fell to the ground. *Id.* at ¶ 5; (DSUF #14).

9. At some point in the encounter with Plaintiff, Officer Chavez thought he observed a plastic bag containing a white substance in Plaintiff's mouth, and that Plaintiff was attempting to swallow the bag. *Id.*; (DSUF #15).

10. Based on his training and experience, Chavez believed the bag contained illegal narcotics because the substance was white and powdery which is indicative of either cocaine or methamphetamine. The packaging of the substance (a plastic bag) is indicative of sale. Chewing and attempting to swallow a bag is also indicative of narcotic trafficking because it is common for drug-related suspects to attempt to destroy evidence of the drug(s) before his/her arrest. *Id*.; (DSUF #16).

11. Officer Chavez held Plaintiff's neck area in an effort to prevent Plaintiff from swallowing what he thought was a bag of drugs. *Id*. at ¶ 6; (DSUF # 17).

7

12. Sgt. Aponte, and Officers Salyers and Padgett were also all at the scene. *Declaration of Officer Jeremy Salyers,* dated April 15, 2015 ("*Salyers' Dec'l*") at ¶¶ 3 & 5 (Doc. 69, at pg. 2); *Declaration of Officer Jesse Padgett,* dated April 16, 2015 ("*Padgett declaration*") at ¶ 3 (Doc. 68, at pg. 2); (DSUF # 19, #35,#28).

13. Officers Salyers, Padgett and Salyers was involved in the physical altercation with Plaintiff and assisted with handcuffing Plaintiff. Officer Salyers tried to secure Plaintiff's left arm and Sgt. Aponte tried to secure his right arm. *Salyers' Dec'l,* at ¶ 5 (Doc. 69, at pg. 2); *Padgett Dec'l,* at ¶ 4 (Doc. 68, at pg. 2); (DSUF #25, #28).

14. Plaintiff was eventually handcuffed. *Salyers' Dec'l* at ¶ 5 (Doc. 69, at pg. 2); *Padgett Dec'l,* at ¶ 4 (Doc. 68, at pg. 2); (DSUF #25, #27, #28).

15. After he was handcuffed, Officer Saylers told Officer Chavez to insert something into Plaintiff's mouth to prevent him from biting down and to get any items in Plaintiff's mouth out. *Salyers' Dec'l*, at ¶ 6, (Doc. 69, at pg. 2); (DSUF # 31).

16. Chavez inserted a flashlight in Plaintiff's mouth to see if Plaintiff had drugs in his mouth. He observed a white powdery substance in Plaintiff's mouth. *Chavez Dec'l*, at ¶ 8 (Doc. 67, at pg. 3); (DSUF #32).

17. Officer Chavez also used his baton to open Plaintiff's mouth and again noticed a white substance inside Plaintiff's mouth. *Chavez Dec'l*, at ¶ 9 (Doc. 67, at pg. 3); DSUF #33-34.

18. Computer checks revealed Plaintiff was on parole. Chavez advised dispatch to call State Parole and apprise them of the charges against Ervin. Parole placed a hold on Plaintiff. *Chavez Dec'l*, at 11 (Doc. 67, at pg. 3); (DSUF, #41).

19. Plaintiff was taken into custody and arrested for four crimes: (1) parole violation (felony); (2) destroying evidence (Penal Code Sec. 135) (misdemeanor); (3) resisting arrest (Penal Code Sec. 148(a)(1) (misdemeanor); and (4) Possession of a Controlled Substance (Health and Safety Code Sec. 11350(a)(1) (felony). *Chavez Dec'l* at ¶ 12. (Doc. 67, at pg. 4); (DSUF # 43).

**V.    Defendant's Version of Events**

According to Defendants undisputed facts, Officer Chavez, was in full uniform and was driving a marked patrol vehicle on the night of the incident. (DSUF #1). He received a report

from dispatch that a citizen had observed a "suspicious vehicle" (a green Ford Focus) in the area of Main Street and K Street in Merced.  (DSUF #2). Officer Chavez observed the Plaintiff driving a green Ford Focus matching the description of the suspicious vehicle, as well as a front-seat passenger in the car. (DSUF ## 3-4). Officer Chavez followed Plaintiff's car for several blocks, the passenger exited the Ford Focus and walked into a store. (DSUF ##5-6).

The Ford Focus traveled to a residential area and stopped at 536 West 8th Street. (DSUF #7). Officer Chavez parked his patrol car and proceeded to approach Plaintiff's car. (DSUF #7). As he did so, Plaintiff got out of the vehicle. (DSUF # 9). Officer Chavez "struck up a conversation with Plaintiff," and "Plaintiff engaged in the conversation." (DSUF # 10).

While they spoke, Officer Chavez noticed a plastic bag inside Plaintiff's mouth containing a white substance.  (DSUF # 9). He asked Plaintiff what it was, and reached for the Plaintiff. (DSUF # 10). As he did so, Plaintiff pushed Officer Chavez away and ran. (DSUF # 13).  Officer Chavez ran after the Plaintiff, tackled him, and they both fell to the ground. (DSUF #14).   A struggle ensued and Officer Chavez contends that while he and the Plaintiff were both on the ground, the Plaintiff tore the plastic bag and was attempting to swallow the contents of the bag which the officer believed was narcotics. (DSUF # 15).  Around this time, Officer Salyers arrived on the scene. (DSUF 19).  Officer Salyers observed Plaintiff resisting and saw Plaintiff push Officer Chavez away as he tried to flee on foot. (DSUF #20).

When Salyers approached Plaintiff and Chavez, he overheard Chavez telling Plaintiff to "spit it out." (DSUF #21). Salyers asked Chavez what Plaintiff had swallowed; Chavez responded a plastic bag with a white substance. (DSUF #22). Salyers saw Ervin chewing the clear plastic baggie and could see the white substance. (DSUF #23). Based upon his training and his experience of arresting subjects for cocaine possession, the white substance appeared similar to cocaine. Salyers believed Plaintiff had swallowed powder or rock cocaine. (DSUF #24).

While Chavez tried to prevent Plaintiff from swallowing, police attempted to take Plaintiff into custody: Officer Salyers tried to secure his left arm, and Sgt. Aponte who was also at the scene attempted to secure Plaintiff's right arm. (DSUF #25). Plaintiff resisted by trying to get up and refused to place his arms behind his back, despite numerous verbal commands. (DSUF #26).

9

1  Salyers ultimately pulled Plaintiff's left-arm from underneath his body and placed handcuffs on
2  him. (DSUF #27). Officer Padgett, who had also arrived on the scene assisted in the handcuffing.
3  (DSUF #28).

4  Amidst the struggle, Officer Salyers saw Officer Chavez attempting to put his finger into
5  Plaintiff's mouth to try and retrieve the bag of narcotics. (DSUF #29).  Because Plaintiff's mouth
6  was in a chewing motion, Salyers told Chavez not to put his finger in there -- he did not want
7  Chavez injured by being bitten. (DSUF #30). Salyers told Chavez to insert something into
8  Plaintiff's mouth to prevent Plaintiff from biting down while allowing retrieval of the narcotics.
9  (DSUF #31). Chavez proceeded to put the flashlight into Plaintiff's mouth which revealed a white
10 substance inside. (DSUF #32). Because the flashlight did not fully open Plaintiff's mouth, Chavez
11 withdrew it and used his baton to reopen Plaintiff's mouth, where Officer Chavez again noticed a
12 white substance inside. (DSUF #34). Officer Padgett later tested the white powdery substance at
13 the scene.  Preliminary tests indicated that the white powdery substance was cocaine. He took a
14 picture of the positive test and logged the photograph into evidence. (DSUF #39).

15 Post-custody, Officer Chavez surveyed the area. He found small pieces of the white
16 substance on the ground where police struggled with Plaintiff. (DSUF #40). While Chavez
17 searched Plaintiff's wallet for any baggies of narcotics, Plaintiff's cell phone rang. The caller
18 requested a "hit." In Chavez's training and experience, requesting a "hit," is a request to purchase
19 illegal narcotics. Officer Chavez also discovered that Plaintiff's wallet contained $240, mostly in
20 denominations of $20, $10, and $5. In his training and experience, people selling drugs commonly
21 carry such $20 and $10, and sometimes $5. Chavez logged the money into evidence. (DSUF #41).

22 A computer check revealed that Plaintiff was on parole. Chavez advised dispatch to call
23 State Parole and apprise them of the charges against Ervin. Parole placed a hold on Plaintiff.
24 Plaintiff's vehicle was also towed, because he was driving with a suspended license. (DSUF #42).
25 Plaintiff was subsequently arrested and charged with (1) parole violation (felony); (2) destroying
26 evidence (Penal Code Sec. 135) (misdemeanor); (3) resisting arrest (Penal Code Sec. 148(a)(1)
27 (misdemeanor); and (4) Possession of a Controlled Substance (Health and Safety Code Sec.
28 11350(a)(1) (felony). (DSUF #43).

///

## VI. Plaintiff's Version of Events

Plaintiff alleges he was approached about 10:30 p.m. on Saturday, January 14, 2012, by an unidentified person who appeared out of the dark asking him whose car he was driving, and where he was coming from. (Doc. 1, pgs. 36-38, 104-105). Plaintiff contends the person who approached him, later identified as Defendant Chavez, did not identify himself as a police officer. *Id.* Plaintiff did not answer Chavez's questions because he feared for his safety and continued walking toward his residence. *Id.*; (Doc. 82, pgs. 6-14).

Plaintiff asserts he was grabbed around the neck from behind and thrown to the ground. *Id.*; (Doc. 82, pg.15). He alleges Officer Chavez and Sgt. Alponte kicked him in the head, back, and shoulder area. *Id.* By the time officers Salyers and Padgett arrived, Plaintiff was handcuffed. Plaintiff contends that Officer Chavez forced Plaintiff's mouth open with a flashlight and baton causing cuts and wounds to Plaintiff's lips, gums, tongue and inner mouth area. *Id.* The force also broke and fractured several of Plaintiff's front top and bottom teeth. *Id.* Plaintiff also alleges that during the altercation he was infected with Hepatitis C which has caused him physical and emotional injuries. *Id.*

Plaintiff asserts he was never in possession of a controlled substance and never attempted to swallow a bag of drugs or destroy evidence. (Doc. 82, pg. 6 ¶ 8; pg. 7 ¶¶ 12-13; pg. 8, ¶ 21; pg. 13, ¶ 46). He contends he followed all of the officers' instructions and did not resist. (Doc. 82, pg. 7 ¶ 14; pg. 8, ¶ 19; pg.12, ¶ 38). He argues that the white powdery substance the officers observed in his mouth after inserting the flashlight and baton were not drugs, but pieces of his teeth, which also landed on the ground as a result of this altercation. (Doc. 82, pg. 8, ¶ 22). He denies that on the night of the incident Officer Chavez answered Plaintiff's phone and an individual requested a "hit" because he did not have drugs. (Doc. 82, pg. 10, ¶ 29).

Plaintiff argues Officer Chavez's initial encounter with him was illegal, and that he was falsely arrested because there was no probable cause to arrest him. (Doc. 1, pgs. 7, 39, 41-42). Plaintiff contends all charges against him were subsequently dropped, except for driving with an expired license. (Doc. 1, pgs. 40, 67). Plaintiff also asserts a cause of action for excessive force

11

because he is a victim of an unprovoked attack by police. (Doc. 1, pg. 7).

**VII.  Discussion**

   *A.  Arrest Without Probable Cause*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. Plaintiff contends that his arrest was illegal because there was no probable cause.

Whether a defendant deprived a plaintiff of his Fourth Amendment right to freedom from unreasonable seizures turns on whether the arrest was justified by probable cause or otherwise. *Dubner v. City and Cnty. of San Francisco,* 266 F.3d 959, 964 (9th Cir.2001).  "Probable cause exists when the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense." *Hart v. Parks,* 450 F.3d 1059, 1065–66 (9th Cir. 2006). (internal citations and quotations omitted).  Probable cause under the Fourth Amendment is an objective inquiry. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The officer's subjective state of mind is not relevant in determining whether probable cause existed to support an arrest. *Id*.

Plaintiff's arrest without probable cause is based on two theories.  Under the first theory, Plaintiff contends that Officer Chavez's initial stop and contact with him was unlawful. Specifically, he argues that he was falsely accused of being the suspect of a 911 call and there was not enough information linking him or the vehicle he was driving to justify Officer Chavez's initial stop.  (Doc. 1, pgs. 7, 39, 41-42).

Under the second theory, Plaintiff contends the arrest was unlawful because he did not possess any drugs or resist officers at the time he arrested, and all of the initial charges against him were dropped.  The only crime he was convicted of was driving with an expired license.[4] (Doc. 1, pgs. 40, 67).  Plaintiff argues that police officers falsely accused him of resisting arrest, destroying evidence, and swallowing a baggie with drugs in order to establish probable cause to arrest him.

---

[4] The Defendants' Motion for Summary Judgment does not indicate whether Plaintiff was ever charged with any of the crimes he was initially arrested for.

12

///

### 1. The Initial Stop

In *Morgan v. Woessner*, 997 F. 2d 1244 (9th Cir. 1993), the Ninth Circuit analyzed the constitutionality of police-citizen encounters as follows:

> Stops under the Fourth Amendment fall into three categories. First, police may stop a citizen for questioning at any time, so long as the citizen recognizes that he or she is free to leave. Such brief, "consensual" exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures. Second, the police may "seize" citizens for brief, investigatory stops. This class of stops is not consensual, and such stops must be supported by "reasonable suspicion." Finally, police stops may be full-scale arrests. These stops are seizures and must be supported by probable cause.

*Morgan,* 997 F.2d at 1252. (internal citations omitted)

The court noted that a person is "seized" only when:

> by means of physical force or a show of authority, his freedom of movement is restrained.... As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty as would under the Constitution require some particularized and objective justification.

*Id*. citing *United States v. Mendenhall*, 446 U.S. 554 (1980).

Thus, an officer may approach a person in a public place and ask if the person is willing to answer questions. If the person voluntarily answers, those responses, and the officer's observations, are admissible in a criminal prosecution. *Florida v. Bostick,* 501 U.S. 429, 434 (1991). Such consensual encounters present no constitutional concerns and do not require justification. *Id*. However, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen," the officer effects a seizure of that person, which must be justified under the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 3, 19 (1968). If an initial stop is a detention for investigative purposes (a *Terry* stop), the officer must have "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). In situations involving a show of authority, a person is seized "if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Brendlin v. California*, 551 U.S. 249, 254–255, (2007).

Examples of circumstances that might warrant a seizure is the use of language or tone of voice indicating that compliance with the Officer's request might be compelled. *U.S. v. Mendenhall*, 446 U.S. at 554.

Defendants do not specifically address Plaintiff's claims related to the initial stop in their moving papers or in their Reply.[5]  Therefore, summary judgment on this basis must be DENIED. Furthermore, Plaintiff contends that he never answered Officer Chavez's questions prior to being tackled.  Under this scenario, Officer Chavez needed reasonable suspicion to stop Plaintiff.  The only facts Defendants offer for the stop is that Officer Chavez questioned Plaintiff based on a citizen's report of a "suspicious vehicle" which does not establish reasonable suspicion, as no articulable facts were supplied indicating that criminal activity was afoot prior to any conversation.  *See*, *Terry v. Ohio*, 392 U.S. at 30.  To the extent that Defendants intended to argue the initial stop was consensual and therefore lawful based on Officer Chavez's conversation with Plaintiff, no facts exist regarding when the conversation occurred, or what was said which is critical in determining if the encounter was indeed consensual, or whether reasonable suspicion was required.  Under either scenario, Defendants have not met their burden for summary judgment with regard to this issue.

*2.   Lack of Probable Cause to Arrest*

As previously noted, "probable cause exists when the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense." *Hart,* 450 F. 3d at1065–66 (9th Cir. 2006).  Probable cause under the Fourth Amendment is an objective inquiry; the officer's subjective state of mind is not relevant in determining whether probable cause existed to support an arrest. *United States v. Lopez*, 482 F.3d at 1072

Defendants have argued that probable cause existed to arrest Plaintiff for: 1) obstructing an investigation, 2) battery on a peace officer, 3) possession of a controlled substance, 4) destruction

---

[5] Defendants also did not move to dismiss any of Plaintiffs' Fourth Amendment claims in their previously filed Motion to Dismiss. (Doc. 13, pg. 9, lines 10-12).

of evidence, and 5) a parole violation. (Doc. 65, pgs. 16-19).   Plaintiff has presented admissible evidence via his own pleadings that he never possessed any drugs, he never ran from the police, and he never disobeyed officer's directives which goes to the essential elements of all of these charges.  (Doc. 1, pgs. 36-38, 104-105).   Instead, Plaintiff contends that the white substance the officers observed in his mouth after opening it with the flashlight and baton where fractured pieces of his teeth. (Doc. 82, pg. 8, ¶ 22).  It is not the role do the Court to weigh the parties' conflicting evidence or make credibility determinations on summary judgment.  *See*, *George*, 752 F.3d at 1214 (9th Cir. 2013).  Plaintiff's evidence suffices to create a disputed issue of material fact regarding whether there was probable cause to justify his arrest.[6] Therefore, Officers Chavez, Slayers, Padgett, and Sgt. Aponte's Motion for Summary Judgment based on lack of probable cause to arrest is DENIED.

### B.     *Excessive Force*

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citations and quotation marks omitted). To conduct this balancing act, the court must evaluate "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The most important factor is whether the suspect poses an immediate threat to the safety of the officers or others. *Id*.

The Graham factors, however, are not exhaustive. *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013).  Rather, courts are to "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in

---

[6] "[T]he requirement of personal knowledge imposes only a minimal burden on a witness; if reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible." *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (internal quotations and citation omitted). Although allegations based purely on belief do not suffice, the personal knowledge threshold is particularly low at summary judgment because all justifiable inferences must be drawn in favor of the nonmoving party.  *Id*. (quotations and citations omitted).

*Graham.*'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir.1994)). "Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given, and whether it should have been apparent to officers that the person they used force against was emotionally disturbed." *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011) (citations omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (1989) (citing *Terry v. Ohio*, 392 U.S. at 20–22). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. The factors involved in that inquiry include: (1) "the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). Reasonableness of the use of force is usually a question for the finder of fact, rather than a question of law. *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994).

Viewing the facts most favorable to the Plaintiff, Defendant Officers have failed to establish an absence of fact that they did not engage in excessive force.  Here, Plaintiff contends that this was an unprovoked attack by all of the officers in which he was choked, kicked, and kneed in the head by Officer Chavez and Sgt. Aponte.  (Doc. 1, pg. 7; 36-38; Doc. 82, at pgs. 7 and 15).  He further contends he was held down by Salyers, Padgett, and Sgt. Aponte while Officer Chavez forced a flashlight and baton into Plaintiff's mouth which resulted in broken and fractured teeth, and caused injuries to his lips, gums, tongue and inner mouth.  (Doc. 82, pg. 8). Plaintiff also denies resisting arrest and refusing to obey the officers' directives.  (Doc. 82, pgs. 7-8).

Defendant Offices have argued that their use of a flashlight and baton to open Plaintiff's mouth was not excessive force because police are allowed to use reasonable force to stop suspects from swallowing drugs.  *See, United States v. Caldera*, 421 F.2d 152, 153 (9th Cir. 1970)

(reasonable force permitted to prevent subject from apparent attempt to swallow evidence, that case drugs); *Espinoza v. United States,* 278 F.2d 802, 804 (5th Cir. 1960) (no excessive force where officers retrieved apparent drugs from subject attempting to swallow them). (Doc. 65, pgs. 22-24).  However, evaluating these facts from the a reasonableness standard, including examining the severity of all of Plaintiff's crimes and whether Plaintiff posed an immediate threat to the safety of the officers or others, the Court is unable to grant summary judgment to the Defendant Officers.

Each party has presented conflicting evidence regarding the extent to which Plaintiff was resisting arrest and the circumstances surrounding his altercation with the police which will have to be assessed by a trier of fact in order to determine the reasonableness of the officer's actions.  *See Chew*, 27 F.3d at 1440. ("Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury"). Therefore, Officers Chavez, Slayers, Padgett, and Sgt. Aponte's Motion for Summary Judgment on lack of probable cause to arrest is DENIED.

### C. Monell

Ervin names the City of Merced Police Department as a Defendant based on municipal liability for violations of his constitutional rights.  *See Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978). Under *Monell*, a municipality may be held liable under § 1983 only for constitutional violations occurring pursuant to an official government policy or custom. *Id*. at 691; *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Plaintiff's has not identified any portion of his pleadings that sufficiently allege the City of Merced Police Department has a policy or custom allowing unconstitutional arrests, nor has be submitted any admissible evidence to oppose Defendant's Motion for Summary Judgment on this issue.  Therefore, Defendant City of Merced Police Department's Motion for Summary Judgment is GRANTED. *Monell*, 436 U.S. at 694; *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

### D. Qualified Immunity

Defendant Officers have argued that they are entitled to qualified immunity as to both probable cause to arrest and excessive force. Qualified immunity is "immunity from suit rather

than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Further, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, __ U.S. __, __, 131 S.Ct. 2074, 2085 (2011).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194 (2001); *Mueller*, 576 F.3d at 993. While it is often beneficial to address these issues in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. *Pearson*, 555 U.S. at 236 (overruling holding in *Saucier* that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); *Mueller*, 576 F.3d at 993-94.

As explained previously in this order, the constitutional rights established under the Fourth Amendment to be free from unlawful search and seizure is clearly established. Here, however, the parties provide drastically different accounts of why each of the Defendants arrested Plaintiff, and what occurred while they did so. It is also not clear what role each officer played in the incident. As a result, the Court is unable to determine whether qualified immunity applies because essentially all of the material facts underlying Plaintiff's claims are disputed. The Court cannot properly assess whether any of the Defendants are entitled to qualified immunity on Plaintiffs' claims unless and until these material factual disputes have been determined by the jury. *See*

*Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.2013) ("The County Defendants are not entitled to qualified immunity at this juncture as the record does not permit us to decide whether they violated clearly established law."); *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) ("In this case, the district court properly denied the summary judgment motion because there are genuine issues of fact regarding whether the officers violated [the plaintiff's] Fourth Amendment rights. Those unresolved issues of fact are also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions."); *Santos v. Gates*, 287 F.3d 846, 855 n. 12 (9th Cir. 2002) (finding it premature to decide whether the officer-defendants were entitled to qualified immunity "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"). Accordingly, the Court DENIES the Defendant Officers' Motion for Summary Judgment on the ground they are entitled to qualified immunity on all of Plaintiff's claims.

**VIII.   Order**

For the reasons set forth above, the Defendants' Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART as follows :

1)   Plaintiff's Sur-Reply (Doc. 94) is STRICKEN;

2)   Plaintiff's Admissions to the Requests for Admissions Set One are WITHDRAWN;

3)   Defendant Officers Chavez, Slayers, Padgett and Sgt. Aponte's Motion for Summary Judgment on Plaintiff's cause of action for a violation of the Fourth Amendment based a theory of unlawful arrest based on a lack of probable cause is DENIED;

4)   Defendant Officers Chavez, Slayers, Padgett and Sgt. Aponte's Motion for Summary Judgment on Plaintiff's cause of action for a violation of the Fourth Amendment based on a theory of excessive force is DENIED;

5)   Defendant City of Merced Police Department's Motion for Summary Judgment on Plaintiff's cause of action for a violation of the Fourth Amendment based a theory of unlawful arrest based on a lack of probable cause and excessive force is GRANTED.  The Clerk of the Court shall terminate this party on the docket;

6) Defendant Officers shall file any Motion to Reopen Discovery in light of the withdrawal of Plaintiff's Admissions no later than October 21, 2015; and

7) Plaintiff has previously indicated a willingness to settle this action. Given the upcoming **Pretrial Conference** that is currently scheduled for **November 11, 2015** (Doc. 79), the parties shall advise the Court as soon as possible whether they would be amenable to participating in a settlement conference. Furthermore, **this case is set for trial on January 19, 2016**. Plaintiff shall advise the Court of his release date no later than **October 21, 2015**, so the Court can assess whether his trial date should be continued.

IT IS SO ORDERED.

Dated:   **October 5, 2015**                    **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE